UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARK S. PALMQUIST, )<br>　　　　　　　　　　　　　　　)<br>　　　　Plaintiff　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>　　v.　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>JAMES PEAKE, Secretary,　　　)<br>Department of Veterans Affairs, )<br>　　　　　　　　　　　　　　　)<br>　　　　Defendant　　　　　　　) | Civil No. 07-98-B-W |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT**

Mark Palmquist is suing the United States Department of Veterans Affairs (VA) in a single count complaint alleging one legal claim of discrimination and retaliation under the Rehabilitation Act, Title VII, and the ADA.  After some initial confusion, the theory of this case has now been honed.  Palmquist contends that he was retaliated against under the Rehabilitation Act for his "protected complaints about disability discrimination" when a supervisor, Sherry Aichner, gave him a poor reference to Delores Tate for a subsequent employment opportunity at the VA Regional Office in Nashville, Tennessee for Ratings Veterans Service Representatives, and he "insists that this reference played a substantial role in his failure to be hired" for one of the Nashville service representative positions.[1]  The United States[2] has filed a motion for summary judgment. (Doc. No. 27.)  I denied Palmquist's motion for oral hearing or, in the alternative, a motion to file a surreply, while giving the United States an opportunity to address the substantive legal issue raised in that motion and in Palmquist's response to the motion for

---

[1] (See Pl.'s Opp'n Mot. Summ. J. at 4.) Palmquist's response to the motion for summary judgment makes it clear that he is bringing a single retaliation claim based on the reference in question. Understandably, the United States briefed its summary judgment motion as if it contained two independent counts, one for discrimination and one for retaliation; the First Amended complaint, while only having one "Legal Claim," suggests this intent. (First Am. Comp, ¶¶ 1,20, Doc. No. 21.)  The United States spent a great deal of time and energy in its original summary judgment motion seeking to discredit a "cat's paw" theory of liability in connection with a claim of direct discrimination regarding the Tennessee hiring decision. (See Def.'s Suppl..Br. at 5 n. 6.)

[2] From here on out I refer to the defendant as the United States.

summary judgment.[3] After a careful review of the record I conclude that Palmquist has not generated a genuine dispute of fact that he engaged in protected conduct under the Rehabilitation Act. What he describes as "protected complaints" were, in fact, complaints about his failure to receive the required preferences as a disabled veteran, and in my view he has not demonstrated that those complaints were "protected complaints against discrimination" under the Rehabilitation Act. I recommend that the Court grant the motion for summary judgment.

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) (quoting United States v. One Parcel of Real Property (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir.1992)). I "draw the relevant facts from the summary judgment record and rehearse them in the light most flattering to" Palmquist. Bergeron v. Cabral, 560 F.3d 1, 4 (1st Cir. 2009) (citing Cox v. Hainey, 391 F.3d 25, 27 (1st Cir.2004)).

The United States has requested that the court strike several paragraphs of Palmquist's statement of additional facts. Some of these requests rely on Pilgrim v. Trustees of Tufts

---

[3]   (Doc. Nos. 55, 56 & 61.)

College, 118 F.3d 864, 871 (1st Cir. 1997) in which the Panel stated that the plaintiff's perception was not evidence. Palmquist has filed a memorandum in response to these requests. I address each one of these disputes in the order in which they appear in the parties' interwoven facts in the attached appendix.[4]

**B.     Legal Framework for a Retaliation Claim under the Rehabilitation Act**

The Rehabilitation Act provides as relevant to Palmquist's claim: "No otherwise qualified individual with a disability in the United States,… shall, solely by reason of her or his disability … be subjected to discrimination … under any program or activity conducted by any Executive agency…." 29 U.S.C. § 794(a).

In his motion for oral argument, Palmquist insists that he is bringing his claim of retaliation under the Rehabilitation Act and not Title VII. (Mot. Oral Argument at 1-2.) In his memorandum in opposition to the motion for summary judgment Palmquist cites to Title I of the American with Disabilities Act (ADA) incorporated into the Rehabilitation Act and relies on the ADA's specific retaliation prohibition, 42 U.S.C. § 12203. (Pl.'s Opp'n Mot. Summ. J. at 5.)

Section 174(d) of title 29, expressly provides:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d).

---

[4] The parties have amassed a huge factual record. In the course of this recommended decision I have culled the limited facts I deem material to this decision and I discuss them in the context of my legal conclusions. Because this is a recommended decision, I have appended the statement of facts in their entirety to assist the District Court Judge in his de novo review of the issues presented by this motion.

And 42 U.S.C. § 12203(a) reads: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). See Jarvis v. Potter, 500 F.3d 1113, 1125 (10th Cir. 2007) (federal employee Rehabilitation Act retaliation claim brought pursuant to 42 U.S.C. § 12203(a)).

Thus, there is no doubt that the "Rehabilitation Act prohibits retaliation against employees for complaining about violations of the Act." Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cit. 2006) (federal employee claim) (citing 29 U.S.C. § 791 and Coons v. Sec'y of the Treasury, 383 F.3d 879, 887 (9th Cir.2004). "To prove retaliation," Palmquist must "establish that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Id. (citing Calero-Cerezo U.S. Dept. Justice, 355 F.3d 6, 25 (1st Cir. 2004)); accord Enica v. Principi, 544 F.3d 328, 343 (1st Cir. 2008) (Title VII).[5]

---

[5] With respect to the adverse action showing, Palmquist must show that a reasonable employee would have found the challenged action "materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). The Supreme Court elaborated:

> The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the anti-retaliation provision as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions."
>
> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.... In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Rochon [v. Gonzales], 438 F.3d [1211,] 1219[ (D.C.Cir.2006) ] (quoting Washington v. [Illinois Dep't of Revenue ], 420 F.3d [658,] 662[ (7th Cir.2005).
>
> We speak of material adversity because we believe it is important to separate significant from trivial harms.

548 U.S. at 67-68; see Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 -20 (1st Cir. 2006) (applying Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) to a retaliation claim by a plaintiff alleging discrimination under Title VII, the Rehabilitation Act, and the ADA). Balko v. Potter, Civ. No. 07-04-P-S, 2008 WL 539273, 11 (D.Me.

**1.      Purported Protected Conduct**

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), interpreting Title VII's anti-retaliation provision relative to its discrimination prohibition, explained: "The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct." 548 U.S. at 65. See also DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008).

The United States explains that it asked in its Interrogatory No. 9 for Palmquist to "'state the first and last name of each person that you contend retaliated against you and for each describe what he/she did to retaliate and the date the alleged retaliation occurred.'" (Mot. Summ. J. at 14.) Palmquist's response to that interrogatory was:

> I contend that [my supervisor] Sherry Aichner retaliated against me for my EEO and other complaints about discrimination. As explained above, in the negative retaliatory reference she gave to the Nashville office about me on March 9, 2006, Ms. Aichner specifically refers to the EEO complaint I filed as a result of Iron Mountain's failure to interview me for the position of Voluntary Services Officer in 2004 or 2005, despite my qualifications for the job. The decision to deny me the promotion to the position in Nashville was based in substantial part on the retaliatory reference provided by Ms. Aichner, and thus, the denial of this promotion was another act of retaliation.

(Ex. 36, Pl.'s Resp. First Set of Interrogs. ¶ 9; see also Mot. Summ. J. at 14-15; Reply Mem. at 2 n. 1.)    In his motion for oral argument, or, in the alternative for leave to file surreply, Palmquist

---

Fe. 25, 2008) (recommended decision) (applying Burlington Northern to a federal employee's Rehabilitation Act discrimination claim and to a retaliation claim brought pursuant to 42 U.S.C. § 2000e-3(a).)

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the burden then shifts to the United States to articulate a legitimate non-discriminatory reason for the reference in question. See Fennell v. First Step Design, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)(Title VII retaliation claim); Mesnick v. General Elec. Co., 950 F.2d 816, 827-28 (1st Cir. 1991) (ADEA retaliation claim); see also Proctor v. United Parcel Service, 502 F.3d 1200, 1207 - 1208 (10th Cir. 2007) (federal employee ADA retaliation claim analyzed under McDonnell Douglas). If the United States crosses this threshold, Palmquist bears "the ultimate burden" of showing "that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Fennell, 83 F.3d at 8 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993) and Mesnick v. General Elec. Co., 950 F.2d 816, 827-28 (1st Cir. 1991)).

I have concluded that I need go no further in my analysis than the "protected conduct" analysis of Palmquist's prima facie case.

points out that he included in his answers to interrogatories the representation that he made a complaint in 2005 about the Chief Patient Service opening as well. (Mot. Oral Argument at 2-3.)

### a. 2004 Voluntary Services Officer union grievance

There is no dispute that Palmquist pursued a Union grievance apropos the lack of success of his application for the 2004 Voluntary Services Officer position. Palmquist represents that he sought EEO counseling with EEO Manager Maryanne Gibler concerning his not receiving an interview for the Voluntary Services Officer Position. He concedes that he did not file a formal EEO complaint following his union grievance because his time had run out to do so but contends that he filed an informal EEO complaint with Gibler prior to filing a union grievance. Gibler stated that it is possible she was aware of Palmquist's complaint in 2004 concerning the Voluntary Services position and cannot remember it now. She prepared an email to help Mr. Paul Noury, the hiring official, respond to Palmquist's union grievance and handled union grievance mediations.

With respect to the Union grievance Palmquist asserts that while the Union alleged that the Master Agreement merit promotion was violated, he alleged that the VA failed to follow its affirmative action policies in place to help advance and promote the veterans with certain targeted disabilities and that "he should have been interviewed and that he should have veteran's preference over all candidates on all lists because he is a disabled veteran." The October 5, 2004, "Report of Contact" clearly sets this out. (See Def.'s Ex. 18 at 1.)

While Aichner testified she was not aware that Palmquist pursued a grievance for not getting the voluntary services position, she was aware that Palmquist planned to go see EEO Manager, Gibler, when he was not interviewed for the position. For its part the United States insists that Aichner testified that Palmquist only told her he was going to see the patient

6

representative vis-à-vis his complaint, who was Gibler. There is no dispute that Palmquist told Aichner about having contacted his congressman.

### b. *2005 Chief of Patient Services application attempt*

As recited in the appendix of facts, according to Palmquist, in 2005, he applied for the position of Chief of Patient Services and submitted this application to Aichner. Aichner notified Palmquist that he did not meet the grade and time requirements for the position. Palmquist explained to Aichner that, although he did not meet the time and grade requirements for the position, he qualified for the position based on his education and the VA's affirmative hiring standards for veterans with disabilities. Aichner refused to fill out the required supervisor's employee appraisal. Aichner was aware of Palmquist's service connection based on being a disabled veteran, but not the percentage amount. She knew that his disability rating was significant enough that he qualified for preference in the hiring process. Of course, Aichner insists that she did not tell him he could not apply for the position. The United States concedes that Palmquist told Aichner that he was working towards a 100-percent service-connected disability rating. Aichner was aware that Palmquist commented that he believed that his disability rating was significant enough that he qualified for preference in the hiring process.

Certainly, the factual basis for this assertion of protected conduct is more murky than the factual basis for Palmquist's efforts apropos the 2004 Chief of Voluntary Services position. However, it seems to me that the fact that this interaction with Aichner followed Palmquist's assertion of his rights vis-à-vis the 2004 opening is likely relevant to the protected activity analysis. It also cannot be overlooked that Aichner's reference to Delores Tate included her report that Palmquist uses his service connected preference and watches carefully to make sure

he gets a job interview and that at one point when he did not get an interview he went right away to a patient representative. (See Doc. No. 38-2.)

### 2. Is this Protected Conduct?

The United States contends in its supplemental brief: "There is no evidence in the record that the cited articles of the Master Agreement have anything to do with an affirmative action plan." (Def.'s Suppl. Br. at 3.) It insists that Palmquist's complaints were about his "veteran's preference" and that § 501 of the Rehabilitation Act "has nothing to do with veterans' preferences nor does the Rehabilitation Act create a private right of action for violations of the veterans' preference laws and regulations." (Id.) The case to which it cites, the Sixth Circuit's Seay v. Tennessee Valley Authority, does state:

> [T]he Rehabilitation Act does not require an affirmative action policy for disabled veterans. Section 501 of the Act requires each federal agency to submit "an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution." 29 U.S.C. § 791(b). To this end, § 501 provides a private remedy for individuals who encounter discrimination on the basis of disability. Mahon v. Crowell, 295 F.3d 585, 589 n. 2 (6th Cir.2002).

339 F.3d 454, 473 -74 (6th Cir. 2003).

Palmquist's assertion is that the VA failed to follow its affirmative action policies in place to help advance and promote the veterans with certain targeted disabilities and that "he should have been interviewed and that he should have veteran's preference over all candidates on all lists because he is a disabled veteran." (Resp. SMF ¶ 30; Ex.18, Oct. 5, 2004, Report of Contact; Palmquist Dep. at 71:25; 72; 73:1-19.)

With regards to the conduct, Palmquist's letter to Congressman Bart Stupak and copied to Anthony Principi, Secretary of the Department of Veterans Affairs is evidence. In this letter Palmquist stresses that he was "a disabled veteran with over 30% service connected disability"

and that he submitted his preference letter when applying. (Doc. No. 28-15 at 1.) He reports: "The other issues concerning not being interviewed stem from violations in current federal laws and the current Iron Maintain VA hospital[']s Disabled Veterans Affirmative Action Program." (Id. at 2.) He does add after describing another veteran's failure to get a position: "The mission statement of the Iron Mountain VA hospital is to 'Eradicate Barriers' for veterans and qualified minorities. These barriers will not be eradicated if the current employment practices continue at this facility." (Id)

The Report of Contact for his third step grievance written by Cynthia Gordon, the Chief of Nursing, indicates: "Mr. Palmquist contends that he should have been interviewed and that he should have veteran's preference over all candidates on all lists because he is a disabled veteran." (Doc. No. 28-19 at 1.) Gordon also notes as one of Palmquist's and the Union's concerns: "If an individual, other than a veterans preference eligible candidate, was selected from a separate certificate, the agency is required to get OPM's approval of bypassing a veterans preference candidate." (Id. at 2.) In his deposition testimony Palmquist summarized his disagreement with the information that he would not be interviewed:

> [W]ithin the VA, that particular VA, they had disabled veterans affirmative action program that outlines how they advance and help promote veterans within certain disabilities.
> Being a targeted individual, individual with a targeted disability, I should at least have warranted an interview if that is true if they followed their policies set forth by the VA that they want to promote and help veterans with targeted disabilities get up there.
> One of the forms that they fill out and sent to the EEO commission every year is a standard 715, I believe, I didn't know the whole thing. That it lists how they're doing with their EEO program and affirmative action.
> Particularly in targeted disabilities, Iron Mountain has failed to promote or help alleviate barriers as they put it to seek and hire jobs within their scope, and Iron Mountain was below that level consistently. So with all those things together, I would assume that I would at least have warranted an interview.

9

(Palmquist Dep. At 72-73.)   He also points out that preference eligible veterans were listed on the vacancy announcement for the Nashville position as the first recruitment category.  (Resp. SAMF ¶ 48, citing Doc. No. 28-16.)  Thus, the evidence of his complaints forwarded by Palmquist belies the notion that he was making a complaint about the VA's affirmative action program "regardless of his veteran status."  Mann v. Geren, No. CV406-267, 2007 WL 2595299, 2 (S.D. Ga. Sep. 5, 2007.)

As I explained in my April 27, 2008, order denying Palmquist's motion for oral argument/ to file a surreply, 29 U.S.C. § 791(b) reads:

> (b) Federal agencies; affirmative action program plans
> Each department, agency, and instrumentality (including the United States Postal Service and the Postal Regulatory Commission) in the executive branch and the Smithsonian Institution shall, within one hundred and eighty days after September 26, 1973, submit to the Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution. Such plan shall include a description of the extent to which and methods whereby the special needs of employees who are individuals with disabilities are being met. Such plan shall be updated annually, and shall be reviewed annually and approved by the Commission, if the Commission determines, after consultation with the Committee, that such plan provides sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities.

29 U.S.C. § 791(b).

And § 791(g) provides:
> The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S .C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

Id. § 791(g).

10

> Thus, the anti-retaliation provision of 42 U.S.C. § 12203(a) is incorporated into the affirmative action provision of 29 U.S.C. § 791(b) and, Palmquist's argument goes, his grievance vis-à-vis the 2004 Voluntary Services Officer position alleged non-affirmative action employment discrimination. Palmquist has also generated facts relating to a 2005 Chief of Patient Services application attempt.

Palmquist v. Peake, Civ. No. 07-98-B-W, 2009 WL 1133459, 1 -2 (D.Me. Apr. 27, 2009).

In responding to my order to supplement, the United States summarizes:

> Plaintiff contends that the law is different under the Rehabilitation Act. To support that argument, he relies on 29 U.S.C. § 791(b) (also referred to as Section 501(b) of the Rehabilitation Act), which requires that federal employers adopt an affirmative action program plan for "hiring, placement, and advancement of individuals with disabilities . . . ." This section "impose[s] a duty upon federal agencies to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignments and promotion." Hall v. United States Postal Service, 857 F.2d 1073, 1077 (6th Cir. 1988)(quoting Prewitt v. United States Postal Service , 662 F.2d 292, 306 (5th Cir. 1981)). There does not appear to be case law directly on point on this issue. However, even if the Court assumes for purposes of this motion that complaints about failing to follow affirmative action plans adopted pursuant to section 501 of the Rehabilitation Act constitute protected conduct, Plaintiff's case fails as a factual matter.

(Def.'s Supp. Br. at 2.) [6]

---

[6] In its original argument in its motion for summary judgment the United States contended that Palmquist did not engage in protected activity because he did not file an EEO complaint or contact EEO officers about the fact that he did not get an interview for the Voluntary Services Officer position. (Mot. Summ. J. at 15.) Recognizing that Palmquist did file a grievance with the Union as to the denial of this interview, it maintained that there was no discrimination claim in the union grievance; the United States insisted that to qualify as protected activity, the complaint must contain allegations cognizable under Title VII and, thus, the underlying complaint must be based on discrimination.  (Id. at 15-16; Reply Mem. at 2.) "Finally," the United States maintained, "summary judgment should be granted because Plaintiff did not have a reasonable belief that he had been discriminated against because of a disability when he did not get the Voluntary Services job." (Mot. Summ. J. at 16.)  Palmquist "was told at the time, he was not granted an interview for the Voluntary Services position because none of the external candidates were interviewed and Plaintiff did not have the grade and time requirements to apply as an internal candidate." (Id. at 16-17.)  The United States insisted that an employer's failure to follow an affirmative action program does not constitute protected Title VII activity.  (Reply. Mem. at 3.)

In his opposition brief Palmquist spends substantial effort attempting to convince the court that he does not have to prove that he is disabled under the Rehabilitation Act to press his retaliation claim.  (Pl.'s Opp'n Mot. Summ. J. at 16-18.)

In its reply brief the United States opined:
> While Plaintiff testified at his deposition that he recalls going to Maryanne Gibler for counseling when he did not get an interview for the Chief of Voluntary Services position, he admits that he filed a grievance, not an EEO complaint (Ex.1, Palmquist Deposition at 77:3-9, 13-22). The fact that Maryanne Gibler was both the patient representative and the EEO Officer, does not convert that complaint into protected activity, particularly where the complaint was that the VA failed to

The United States identifies 5 U.S.C. § 2108 as being the provision on which Palmquist must depend to assert his veteran's preference dispute. See also 5 U.S.C.A. § 3112. It maintains that there is no private cause of action under this provision and Taydus v. Cisneros, 902 F. Supp. 278, 284 (D. Mass. 1995) supports this position. See also Luttrell v. Runyon, 3 F. Supp. 2d 1181, 1187 (D. Kan. 1998).

However, the Vietnam Era Veterans' Readjustment Assistance Act (VEVRA) includes the following provision:

> (c) Each agency shall include in its affirmative action plan for the hiring, placement, and advancement of handicapped individuals in such agency as required by section 501(b) of the Rehabilitation Act of 1973 (29 U.S.C. 791(b)), a separate specification of plans (in accordance with regulations which the Office of Personnel Management shall prescribe in consultation with the Secretary, the Secretary of Labor, and the Secretary of Health and Human Services, consistent with the purposes, provisions, and priorities of such Act) to promote and carry out such affirmative action with respect to disabled veterans in order to achieve the purpose of this section.

38 U.S.C.A. § 4214(c). It is not clear to me from reading the definition section of this act -- which clearly also addresses veterans that are not § 4211(2) "veteran[s] of the Vietnam era" -- that this provision could not apply to Palmquist[7] or other veterans impacted by the hiring actions of which Palmquist complained. See id. § 4211(1), (3), (4), (6); id. § 4214(b)(2).[8] If Palmquist

---

follow its affirmative action program for disabled veterans and not something cognizable under Title VII. Moreover, the facts do not support his claim that he even went to Maryanne Gibler. Maryanne Gibler has no memory of Plaintiff coming to her with this complaint, either formally or informally, (Def. SMF ¶ 25), and there is no documentation that he went to her. Since Plaintiff cannot file both an EEO complaint and a grievance but must do one or the other, (Def. SMF ¶ 23), and since he admits that he filed a grievance, and the nature of his complaint was not cognizable under Title VII, the Court can fairly conclude that he did not make an EEO complaint.

(Reply Mem. at 3-4.)

[7] Palmquist served in the U.S. Marines from 1984 to 1990-1991.

[8] The Third Circuit addressed in Antol v. Perry whether or not an individual complaining of a noncompliance with 38 U.S.C. § 4214(c) had a private right of action. The plaintiff argued "that when Congress included language in VEVRA instructing agencies to incorporate their affirmative action plans for disabled veterans into Rehabilitation Act § 501(b) affirmative action plans, Congress created a private right of action for violation of a VEVRA

is relying upon this section as providing the legal framework for his retaliation claim under the Rehabilitation Act, one would think the factual record would set forth his eligibility under this section and his argument filed in response to the motion or in his substantive motion to file a surreply would have explained how this provision relates to his retaliation claim that he engaged in "protected conduct." Palmquist never mentions this statute and the United States only references it in a footnote, citing the Antol case for the proposition that there is no private right of action, but not addressing the language quoted above which appears to incorporate the veterans preference affirmative action requirements into the Rehabilitation Act. (See Def.'s Suppl. Br. at 4 n.4.)

The United States concedes that the Rehabilitation Act's affirmative action provision "'impose[s] a duty upon federal agencies to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion.'" Hall v. USPS, 857 F.2d 1073, 1077 (6th Cir. 1988) (quoting Prewitt v. United States Postal Service, 662 F.2d 292, 306 (5th Cir. Unit A 1981), quoting Ryan v. FDIC, 565 F.2d 762, 763 (D.C.Cir.1977), and citing Mantolete v. Bolger, 767 F.2d 1416, 1421 (9th Cir.1985)). Hall noted: "This affirmative action obligation goes beyond the obligation set forth in section 504, which, by its terms, requires only non-discrimination." Id. (emphasis added). So, in this sense, and this sense only, Palmquist's 2004 and 2005 complaints could be construed as complaints "about violations of the Act." Quiles-Quiles, 439 F.3d at 8. However, Palmquist has certainly

---

affirmative action plan." 82 F.3d 1291, 1296 (3d Cir. 1996). "There may be many reasons why Congress chose not to provide for private suits against an Agency under VEVRA to enforce § 4214(c)." Judge Nygaard stated, adding: "We will not speculate as to those reasons. Regardless of whether we would agree with those reasons, Congress did not intend a private right of action, and we cannot create one under the guise of statutory construction." Id. at 1298. Judge Sarokin dissented as to this conclusion, arguing: "The plain language of § 403(a) does more than 'merely mentioning the Rehabilitation Act.' It makes the plan with respect to disabled veterans a part of the agency's 501(b) plan." Antol, 82 F.3d at 1304 (Sarokin, J., dissenting in part) (cross-reference omitted) (quoting Blizard v. Dalton, 876 F. Supp. 95, 98 (E. D. Va. 1995).

not pressed an argument or generated facts that he was complaining under VEVRA. Yet it is clear from the factual record that Palmquist was not complaining about disability discrimination in the workplace; he was complaining about the VA's failure to follow some undefined disabled veterans' preference affirmative action program.

When push comes to shove regarding my recommendation on this summary judgment motion, Palmquist has not set forth <u>facts</u> that would establish he was complaining about a veteran's preference that might possibly be construed as part of the Rehabilitation Act's affirmative action mandate. While Palmquist might have believed whatever program he had in mind was incorporated into the Rehabilitation Act's affirmative action mandate, I have no legal basis to judge the reasonableness of that belief because the factual record is devoid of evidence about the contours of the Iron Mountain program. The detailed factual record does not support the conclusion that his complaints related to the Rehabilitation Act's more generic requirement regarding affirmative action for all disabled individuals. Whether Palmquist was complaining about his own status or lobbying on behalf of others,[9] the summary judgment record has to demonstrate that his complaint arose under the affirmative action provision of the Rehabilitation Act to even arguably be actionable as protected conduct.

As set forth in the appended compilation of facts, Palmquist has indicated that in 1998 he entered a Vocational Rehabilitation Program sponsored by the Veterans Administration because of the severity of his service connected disabilities. He states that he provided the VA with proof of his disability from his vocational rehabilitation counselor and by registering on the VA website. He identifies the "Iron Mountain VA hospital's Disabled Veterans Affirmative Action

---

[9] See <u>Gomez-Perez v. Potter</u>, __ U.S. __, __-__,128 S.Ct. 1931, 1936 -37 (2008) (summarizing precedents that recognize a protection against retaliation for complaining about discrimination against others).

Program" and represents that "these laws and policies establish a program to promote and consider disabled veterans over 30% for positions they are qualified for." Palmquist told his supervisor, Aichner, that he was working towards a 100-percent service-connected disability but I have no clue what that endeavor entails and the factual record does not tell me. Palmquist maintains that since 2000 the Iron Mountain facility has consistently failed to meet its affirmative action goals for hiring of individuals with targeted disabilities but I have no facts about what those goals are and from where they are derived and how they have become incorporated into the Rehabilitation Act.

     Otherwise I know that during his employment at Iron Mountain, Palmquist was receiving compensation for a service connected disability rated at 40% and that at the time that Palmquist applied for this position he had a 10 point veteran's preference. Eligible veterans receive many advantages in Federal employment, including preference for initial employment and a higher retention standing in the event of layoffs but the veteran's preference laws do not guarantee the veteran a job, nor do they give veterans preference in internal agency actions such as promotion, transfer, reassignment, and reinstatement. Veterans who qualify as preference eligibles (meaning they typically must have served on active duty for at least 2 years during a period of war or in a campaign or expedition for which a campaign badge is authorized, or be disabled) are entitled to an additional 5 or 10 points added onto their earned rating in a competitive civil service examination. In all other situations (for example, selection from a merit promotion list or other "internal" action such as reassignment, transfer, or reinstatement), veterans' preference is not a factor. Palmquist's veteran's preference makes him eligible to apply under special appointing authorities such as those for disabled veterans, veterans readjustment appointment (VRA) eligibles, those veterans having completed substantially three or more years of service under

honorable conditions, and severely handicapped individuals. The record evidence for this information is a declaration of Kathy Lee, a VA Human Resources Specialist who has additional duties of EEO Program Manager. (Def.'s Ex. 40, Doc. No. 41.) Palmquist adds that in addition to the advantages veteran's preference laws create in federal employment, the VA's affirmative action programs mandate practices and policies that promote the hiring and retention of disabled veterans as well. For this proposition he relies on his own deposition.

In short, the record includes facts that suggest that there are certain policies and regulations pertaining to veterans underlying Palmquist's veteran's preference affirmative action dispute with the VA. However, as the master of this civil action which he instigated Palmquist has not – even by the summary judgment stage – sufficiently connected the legal and factual dots to establish that he could meet the first predicate of his prima facie Rehabilitation Act retaliation claim. In other words Palmquist has not shown this court how the Rehabilitation Act incorporates any specific affirmative action policy or regulation for disabled veterans that has anything to do with the complaints he made. The record evidence is clear. Palmquist was not complaining in general about discrimination against disabled individuals or even disabled veterans. His so-called "protected complaints" were all about the VA's failure to properly implement a disabled veterans' preference under an affirmative action program. Palmquist's eleventh-hour motion to file a surreply (which was in fact a substantive surreply in disguise), or in the alternative, for oral argument, cannot salvage this lack of factual and legal foundation in the summary judgment record. The United States when fashioning its reply to Palmquist's response to its motion, and this court when fashioning its ultimate decision, is entitled to know not only the broad theory by which Palmquist claims to have engaged in "protected conduct" but also the factual predicates by which that theory is put into practice.

In making this recommendation I am well aware that to survive a motion for summary judgment Palmquist need only demonstrate he had a good faith, reasonable belief that the underlying challenged actions of the VA violated the Rehabilitation Act.  See, e.g., Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (Title VII) (citing Wimmer v. Suffolk County Police Dept., 176 F.3d 125, 134 (2d Cir. 1999)); Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 n. 20 (1st Cir. 2005) (ADEA); Claudio-Gotay v. Becton Dickinson Caribe, Ltd, 375 F.3d 99, 102 (1st Cir. 2004) (FLSA). There is no question "that a plaintiff may state a prima facie case for retaliation even when her primary claim for discrimination is insufficient to survive summary judgment." Wimmer, 176 F.3d at 136.  My point is not that Palmquist could not meet this burden but that he has failed to present the facts and the legal framework necessary for this court to analyze this claim.  The record does indicate that Palmquist thought the VA was not respecting policies with respect to veterans preferences and he communicated this belief to Aichner; it does not provide a sufficient basis to conclude that he had a reasonable belief that the failure to sufficiently credit the veteran's preference scheme violated the Rehabilitation Act and Palmquist communicated that belief to the VA.  Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003) (citing Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261-62 (1st Cir.1999)).[10]

Palmquist's theory of retaliation under the section of the Rehabilitation Act which requires federal agencies to adopt affirmative action programs for disabled veterans is a novel one.  I could find no cases addressing the precise issue.  At a minimum Palmquist should have at

---

[10] For example if an employee complained that a hiring decision was a violation of his or her rights because it was made based on his or her age, he or she could not bring a retaliation claim under the ADA.  There has to be some linkage between the type of discrimination, the content of the complaint identified as "protected conduct," and the federal statutory scheme under which the retaliation claim is brought. The summary judgment record before me does not have that linkage.

least explained what program(s) the Veteran's Administration adopted that was/were incorporated into the Rehabilitation Act and, thereby, made his complaints about noncompliance "protected conduct." Surely Palmquist should have spelled this out for the United States and the Court no later than in his response to the motion for summary judgment. He did not do so and I recommend that the Court grant the motion for summary judgment.

## Conclusion

For the reasons set forth above, I recommend that the Court grant the motion for summary judgment as to the single count of Palmquist's complaint.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 18, 2009