UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARK S. PALMQUIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 07-98-B-W |
| | ) | |
| ERIC K. SHINSEKI, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S MOTION *IN LIMINE***

Mark S. Palmquist, a former Marine and former employee of the United States Department of Veterans Affairs (VA), brings this action against the VA alleging unlawful retaliation under the Rehabilitation Act, 29 U.S.C. § 791. Mr. Palmquist has filed a Motion *in Limine* for Judgment on Defendant's After-Acquired Evidence Defense and Exclusion of Evidence Relating to that Defense. The Court grants Mr. Palmquist's motion in part; the Government may introduce after-acquired evidence on damages only, not on liability.

I.  **BACKGROUND**

In May 2004, Mr. Palmquist began working for the Department of Veterans Affairs (VA) at its Medical Center in Iron Mountain, Michigan as a medical support assistant.[1] *Complaint* ¶ 9 (Docket # 1) (*Compl.*). In February 2006, he applied for a job opening posted at the Nashville, Tennessee regional office of the Veterans

---

[1] For a more complete recitation of the facts underlying Mr. Palmquist's claim, see *Palmquist v. Shinseki*, Civil No. 07-98-B-W, 2009 U.S. Dist. LEXIS 73637 (D. Me. Aug. 19, 2009); *Palmquist v. Peake*, Civil No. 07-98-B-W, 2009 U.S. Dist. LEXIS 47923 (D. Me. May 18, 2009).

Benefits Administration of the VA. *Id.* ¶ 13. In late March 2006, Mr. Palmquist was notified that he was not selected for the Tennessee position. *Id.* Mr. Palmquist continued to work for the VA in Michigan, until October 2006, when he began to work for Togus VA Medical Center in Augusta, Maine. *Pl.'s Additional Statement of Material Facts* ¶ 131 (Docket # 34) (*Pl.'s ASMF*). Mr. Palmquist remained at Togus until March 8, 2010. *Pl.'s Mot.* in Limine *for (1) J. on Def.'s After-Acquired Evidence Defense and (2) Exclusion of Evidence Relating to that Defense* at 3 (Docket # 106) (*Pl.'s Mot.*). Mr. Palmquist is no longer a VA employee. *Id.*

Mr. Palmquist's Complaint involves the period he was employed by the VA in Michigan and applied for the Tennessee position. Mr. Palmquist alleges that his immediate supervisor at the VA in Michigan gave him a bad employment reference for the Tennessee position in retaliation for complaints he made about disability discrimination. *Compl.* ¶ 15, 16. He says this bad reference played a substantial role in his failure to be hired for the Tennessee job. *Id.*

The motion *in limine* stems from a VA investigation of Mr. Palmquist which began in February 2009 while he was employed at Togus, but after he had experienced the adverse employment action. In its September 23, 2009 Pretrial Memorandum, the Government states that the following issue of law would be controverted at trial:

> E. Whether recently discovered misconduct by the Plaintiff relating to his receipt of certain VA benefits renders him unqualified for the position he sought in 2006, thus, effecting liability and/or damages.

*Def.'s Pretrial Mem.* at 3 (Docket # 75). Specifically, the alleged misconduct relates to Mr. Palmquist's "improper receipt of certain VA benefits for dependants." *Pl.'s Mot.* at 1. A dispute ensued, and on April 30, 2010, Magistrate Judge Kravchuck ordered Mr. Palmquist to file "his Motion in Limine that if successful, would be dispositive of one of the Government's claims in defense no later than May 5, 2010. This motion is also directed to the use of that testimony for impeachment purposes as well." *Report of Telephone Conference and Order* at 1 (Docket # 105).

On May 5, 2010, Mr. Palmquist filed a Motion *in Limine* for (1) Judgment on Defendant's After-Acquired Evidence Defense and (2) Exclusion of Evidence Relating to that Defense. *Pl.'s Mot.* The Government filed its opposition on May 26, 2010. *Def.'s Opp'n to Pl.'s Motion* in Limine (Docket # 108) (*Def.'s Opp'n*). Mr. Palmquist replied. *Pl.'s Reply in Support of Mot.* in Limine *for (1) J. on Def.'s After-Acquired Evidence Defense and (2) Exclusion of Evidence Relating to that Defense* (Docket # 109) (*Pl.'s Reply*).

## II. DISCUSSION

### A. Mark S. Palmquist's Position

Mr. Palmquist's motion is two-fold. He argues that he is "entitled to judgment on the after-acquired evidence defense because the Defendant obtained that evidence relating to VA benefits while Plaintiff remained an employee but Defendant never sought any adverse action against Plaintiff based on that evidence." *Pl.'s Mot.* at 1. Additionally, he argues that the evidence relating to the

3

VA benefits should be "excluded under Fed. R. Evid. 403 and applicable case law, including First Circuit precedent" because it is "collateral, character evidence." *Id*.

Mr. Palmquist contends he is entitled to judgment on the after-acquired evidence defense because "the alleged misconduct of Plaintiff relating to the VA benefits was not known to Defendant at the time of and played no role in the only two adverse actions at issue in this case, both of which occurred in March 2006." *Pl.'s Mot*. at 2. For support, Mr. Palmquist cites *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) and states that evidence of his alleged misconduct "is completely irrelevant to a finding of liability in this case" and "at most can be taken into account in determining the remedy." *Id*.

Mr. Palmquist takes the argument a step further and maintains that the after-acquired evidence should not be permitted even at the remedy stage, because the Government has not met its burden of demonstrating that "'the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge [or other adverse employment action being challenged by Plaintiff].'" *Pl.'s Mot*. at 2-3 (citing *McKennon*, 513 U.S. at 362-62) (alteration made by Plaintiff). Further, he says that the VA "never took or attempted to take any adverse employment actions against the Plaintiff because of the alleged evidence of benefits misconduct." *Pl.'s* at 3. "[B]ecause Plaintiff remained an employee when Defendant discovered the after-acquired evidence of alleged wrongdoing, it cannot pursue the after-acquired evidence defense because it never terminated or disciplined or even thought to

4

terminate or discipline Plaintiff 'on those grounds alone' or even on those grounds in part." *Id.* (citing *McKennon*, 513 U.S. at 363).

Mr. Palmquist also argues that the evidence should be excluded because it is "collateral to any issue in this case," it is "forbidden character evidence," and its "probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." *Pl.'s Mot.* at 3, 4 (alteration in original).

### B. The Government's Response

The Government counters that the "Plaintiff's motion for 'judgment' should be stricken or summarily denied because a motion for judgment cannot be raised in a motion in limine." *Def.'s Opp'n.* at 2. The Government also takes issue with Mr. Palmquist's contention that because he "was not immediately fired from his Maine job at Togus upon the discovery of the benefits fraud, the VA is precluded from arguing that he would have been fired from the job [in Tennessee] that is the subject of this litigation." *Id.* at 3. As for the merits of Mr. Palmquist's motion, the Government argues that whether Mr. Palmquist "was fired from Togus is irrelevant to the issue of whether he would have been fired from the Tennessee job." *Id.* at 3. The Government also submits the affidavits of two officials—one from Tennessee and one from Maine—to support its position that Mr. Palmquist would have been fired from either job for engaging in VA benefits fraud. *Id.* citing to Ex. C., *Aff. of Ryan Lilly* (*Lilly Aff.*); Ex. B, *Aff. of Travis Kraft* (*Kraft Aff.*) The Tennessee official is expected to testify that Mr. Palmquist "would have been fired from that job upon discovery that Palmquist had committed benefits fraud," while the Maine official is

5

expected to testify that no action was taken against Mr. Palmquist "because a criminal investigation was pending but that they would have taken action upon the completion of the criminal investigation." *Id*. at 3, 4. Because the "evidence of benefits fraud raises important issues of fact on the question of damages," the Government argues that there is "no basis for judgment as a matter of law at this time." *Id*. at 4.

Finally, the Government asserts that "[e]vidence of specific instances of misconduct is admissible through inquiry on cross-examination if that evidence is 'probative of truthfulness or untruthfulness.'" *Gov't's Opp'n* at 4 (quoting Federal Rule of Evidence 608). The Government continues that it "has the right to impeach Mr. Palmquist's credibility at trial by questioning him about prior instances of untruthfulness." *Gov't's Opp'n* at 4.

### C. The Court's Analysis

#### 1. The Motion *in Limine* for Judgment

Mr. Palmquist has filed a novel motion: a motion *in limine* for judgment. There is no such thing. Mr. Palmquist may select among a number of vehicles to obtain a ruling on the Government's after-acquired evidence, including a motion *in limine*, a motion for judgment on the pleadings under Rule 12(c), a motion for summary judgment under Rule 56, or a motion to strike insufficient defense under Rule 12(f). But he may not amalgamate these motions. The problem is that each motion has its own process and standard and a "motion *in limine* for judgment" is unwieldy since it conflates the discretionary standard for evidentiary rulings and

6

the error of law standard for dispositive rulings. *Compare United States v. Whitney*, 524 F.3d 134, 141 (1st Cir. 2008) (stating that "evidentiary rulings . . . are reviewable for abuse of discretion"), *with Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009) (decision by district court to grant a motion to dismiss "[r]eview[ed] . . . for plain error"; *see also Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 629 (1st Cir. 2002) (stating that the First Circuit's "review[s] the district court's summary judgment conclusions de novo"). To avoid unnecessary confusion, the Court treats the motion purely as a motion *in limine*, seeking a pretrial determination of the admissibility of after-acquired evidence.

### 2. After-Acquired Evidence

In *McKennon*, the Supreme Court held that when an employee's misconduct "was not discovered until after she had been fired[,]" the employer "could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." 513 U.S. at 359-60. Even though after-acquired evidence of an employee's wrongdoing is not relevant for purposes of employer liability, *McKennon* ruled that such evidence "must be taken into account . . . lest the employer's legitimate concerns be ignored[]" when determining "the proper boundaries of remedial relief." 513 U.S. at 361; *see also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 101 (1st Cir. 1997) (interpreting the *McKennon* decision as holding "that [after-acquired] evidence [of wrongdoing] was *not* relevant to the employer's liability . . ., but would be relevant in determining what remedy was appropriate").

7

The Government anticipates an issue as to whether any misconduct by Mr. Palmquist "renders him unqualified for the position he sought in 2006, thus effecting liability and/or damages." *Def.'s Pretrial Mem*. at 3. This is too broad. The parties do not dispute that the alleged misconduct was not discovered until 2009, well after the alleged adverse action in 2006 when Mr. Palmquist applied but was not selected for the Tennessee job. *Gov't's Opp'n* at 2. The alleged benefits fraud could not have been a motivating factor for any adverse action Mr. Palmquist experienced in 2006 and under Supreme Court and First Circuit precedent, Mr. Palmquist's alleged benefits fraud is not relevant for liability purposes. *McKennon*, 513 U.S. at 359-60; *Nieves-Villanueva*, 133 F.3d at 101.

Although the after-acquired evidence of benefits fraud may be relevant on damages, if an "employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[2] *McKennon*, 513 U.S. at 362-63; *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004) (stating that *McKennon* "makes clear that the burden of establishing these facts rests on the employer"). In *Sellers*, the Eighth Circuit determined that a court must look to "the employer's actual employment practices and not merely the standards articulated in its manuals" when evaluating whether the employer in fact would have suffered the adverse

---

[2] One district court held that the "after-acquired evidence" defense is an affirmative defense that must be pleaded and proved pursuant to Rule 8(c), but granted an oral motion for leave to amend the answer to assert the defense. *Red Deer v. Cherokee County*, 183 F.R.D. 642, 653, 656 (N.D. Iowa 1999).

8

employment action. *Id*. The Ninth Circuit concluded that an employer must establish by a preponderance of the evidence "not only that it *could* have fired an employee for the later-discovered misconduct, but that it *would* in fact have done so." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996). The *O'Day* Court further explained that this inquiry "focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects recognition that employers often *say* they will discharge employees for certain misconduct while in practice they do not." *Id.*; *see also Adams v. City of Grenta*, Civil Action No: 07-9720 Section: R, 2009 U.S. Dist. LEXIS 79014 at *21 (E.D. La. Sept. 2, 2009) (stating "[a]n employer must demonstrate, by a preponderance of the evidence, that its actual employment practices would have led to the employee's termination, not simply that the employee's conduct was in contravention of the employer's stated policies").

Here, the Government attached a "Case Authorization" dated April 21, 2009 from the Office of Inspector General (OIG), Criminal Investigation Division of the Department of the Veteran Affairs containing the results of its investigation of Mr. Palmquist which was initiated on February 4, 2009. *Def.'s Reply*, Ex. A. According to the OIG report, a complaint was lodged against Mr. Palmquist from a person who wished to remain anonymous; the complainant alleged that Mr. Palmquist "received [VA dependency] benefits for a former wife and two children despite being divorced from that marriage, re-married and now divorced again." *Id*. at 1. The loss to the VA is alleged to be approximately $10,917. *Id*. at 2. The Government also

9

presented the affidavit of Ryan Lilly, the Associate Director of the Department of Veterans Affairs Medical Center at Togus, Maine and the "second line supervisor" of Mr. Palmquist and the affidavit of Travis Kraft, the Veterans Service Center Manager of the Veterans Benefits Administration Regional Office in Nashville, Tennessee and "the third-line supervisor of the position for which Mr. Palmquist applied." *Lilly Aff*. ¶ 2; *Kraft Aff*. ¶ 2. Both Mr. Lilly and Mr. Kraft aver that they "would have proposed a removal action" if Mr. Palmquist had "been formally charged with VA benefits fraud." *Lilly Aff*. ¶ 5; *Kraft Aff*. ¶ 5.[3]

Mr. Palmquist vigorously denies any wrongdoing and alleges that he has "many factual and legal defenses" "to rebut the VA's false (and suspiciously) timed allegations of benefits misconduct." *Pl.'s Mot*. at 4. He claims that he notified the VA office in Detroit, where his records are kept, but suggests that those notices may have been misplaced as the "VA Veterans Benefits Administration does not have effective control over veterans' benefits claims" and the regional office in Detroit, "has a especially serious problem with document tampering and misplacing veterans' benefits records." *Pl.'s Mot*. at 3. He also argues that there is "unusually strong evidence of bias against Plaintiff by VA investigator Timothy Bond, listed by the VA as its witness in the case concerning the after-acquired evidence" *id*. at 5, as well as from Mr. Kraft. *Pl.'s Mot* at 4; *Pl.'s Reply* at 4. He further contends that since no formal criminal charges have been filed, contrary to Mr. Kraft's affidavit,

---

[3] The wording of the two affidavits differs slightly. Mr. Kraft states that he "would have proposed a removal action against Mr. Palmquist *once* he had been formally charged with any form of VA benefits," while Mr. Lilly states that he "would have proposed a removal action against Mr. Palmquist *if and when* he had been formally charged with VA benefits fraud." *Kraft Aff*. ¶ 5, *Lilly Aff*. ¶ 5 (emphasis added).

10

"it is undisputed that as of today Mr. Palmquist would not have been subjected to any adverse employment action in the Tennessee position based on the VA benefits fraud allegation." *Pl.'s Reply* at 4.

There are two issues of material fact at play here: whether Mr. Palmquist engaged in misconduct, and whether the conduct was so severe that the VA would have terminated him from either the Tennessee or Maine jobs. Both issues must be resolved by a jury. *See Davidson v. Mac Equipment, Inc.*, Civil Action No. 93-2500-EEO, 1995 U.S. Dist. LEXIS 4711, *8 (D. Kan. Mar. 6, 1995) (questions of fact remain regarding whether the plaintiff actually engaged in misconduct); *Roalson v. Walmart Stores*, 10 F. Supp. 2d 1234, 1236 (D. Kan. 1998) (questions of fact remain regarding whether alleged behavior was serious enough to preclude plaintiff's hire); *see also Wehr v. Ryan's Family Steak House*, 1996 U.S. App. LEXIS 26766, at *8-9 (6th Cir. 1996) (stating whether employer satisfied its burden under *McKennon* is a question of fact); *Femidaramola v. Lextron Corp.*, CIVIL ACTION NO. 3:05CV643JS, 2006 U.S. Dist. LEXIS 67047, *21-22 (S.D. Miss. Sept. 18, 2006) (stating that the after-acquired evidence doctrine involves question of fact).

Mr. Palmquist is concerned, however, that if jury hears about the pending investigation into his alleged misconduct he will be unfairly prejudiced on his retaliation claim. *Pl.'s Mot*. at 4. He has a solution: exclude all after-acquired evidence. Mr. Palmquist's solution is too radical. It contravenes *McKennon*'s directive that an employee's wrongdoing "must be taken into account . . . lest the employer's legitimate concerns be ignored." *McKennon*, 513 U.S. at 361.

11

Many courts have bifurcated the liability and damages phases of trial when after-acquired evidence of wrongdoing is inadmissible on liability, but admissible on damages. *EEOC v. Fargo Assembly Co.*, 142 F. Supp. 2d 1160, 1165 (D.N.D. 2000); *see also Junto v. Maricopa Co.*, 1999 U.S. App. LEXIS 21545 (9th Cir. 1999). Other courts have employed limiting instructions. *See Adelman v. GMAC Mortg. Corp.*, 1998 U.S. Dist. LEXIS 1211, *6-9 (E.D. Pa. Feb. 5, 1998) (denying request for bifurcation because it found that a limiting instruction would be sufficient to ensure that the evidence would not be improperly used).

Either solution is acceptable; neither is without drawbacks. As the parties have not expressed their preferences, the Court will await their guidance before addressing this question.

### 3. Evidentiary Objections

Mr. Palmquist still objects, contending that the admission of after-acquired evidence of wrongdoing would violate several rules of evidence. First, he says the evidence would be collateral to the issues at trial; second, he says that the evidence is not truly impeachment evidence, but forbidden character evidence; and, third, he says that its probative value is outweighed by the danger of unfair prejudice and confusion of the issues. *Pl.'s Mot.* at 3-6.

The brief answer is that *McKennon* requires that an employee's wrongdoing be considered at the remedy stage "to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *McKennon*, 513 U.S. at 361. Thus,

under *McKennon*, an employee's wrongdoing, if sufficiently serious, is not collateral to the question of remedy. At the same time, if the quality of the employer's after-acquired evidence is so flimsy that its only purpose must be to smear the plaintiff, the court could still exclude it under Federal Rule of Evidence 403, 404(a), or 608(b). Fed. R. Evid. 403, 404(a), 608(b).

But on a preliminary basis, the after-acquired evidence here clearly survives this attack. The VA's evidence could lead to the conclusion that Mr. Palmquist deliberately cheated the Government by claiming "[VA dependency] benefits for a former wife and two children despite being divorced from that marriage, re-married and now divorced again" and causing the VA a loss of approximately $10,917. *Def.'s Reply*, Ex. A. at 1. As such, the evidence may be admissible under Rule 608(b). Fed. R. Evid. 608(b). As the First Circuit observed in *United States v. Shinderman*, "a witness's willingness to lie to the government . . . is highly probative of his character for truthfulness." 515 F.3d 5, 17 (1st Cir. 2008). Whether the Government's proposed evidence will be admitted at trial and, if so, for what purposes, remains to be seen, but on this record, the Government's after-acquired evidence would not be inadmissible.

## III. CONCLUSION

The Court GRANTS in part and DENIES in part Mr. Palmquist's Motion *in Limine* for Judgment on After-Acquired Evidence and Exclusion of Evidence Relating to that Defense (Docket # 106). The Court DENIES that portion of the motion requesting judgment and DENIES that portion of the motion requesting the

exclusion of after-acquired evidence from the damages portion of the trial. The Court GRANTS that portion of the motion requesting the exclusion of after-acquired evidence from the liability portion of the trial.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2010