UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARK S. PALMQUIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07-cv-00098-JAW |
| | ) | |
| ERIC K. SHINSEKI, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON THE PLAINTIFF'S MOTION FOR REVIEW OF THE CLERK OF COURT'S ORDER ON COSTS**

After a four-day jury trial on Mark S. Palmquist's retaliation claim under the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*, against his employer, the jury decided the case in favor of Eric K. Shinseki, the Secretary of the Department of Veterans Affairs. Following the verdict, the Secretary filed a Bill of Costs and the Clerk of Court ordered Mr. Palmquist to pay the Secretary a reduced amount—$10,191.20. In response, Mr. Palmquist moved to overturn the Clerk's Order on several grounds. Because costs are awarded presumptively in Rehabilitation Act cases and Mr. Palmquist has not otherwise shown that he is entitled to relief from costs, the Court affirms the Clerk's Order.

I.    **STATEMENT OF FACTS**

A.    **Factual Background**

On May 27, 2008, Mark S. Palmquist filed an amended complaint against Eric K. Shinseki in his official capacity as the Secretary of the Department of

Veterans Affairs (VA) alleging that the Secretary discriminated and retaliated against him in violation of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964.  *First Am. Compl.* ¶ 20 (ECF No. 21) (*Am. Compl.*).  According to the allegations in the Amended Complaint, Mr. Palmquist suffered a traumatic brain injury and related physical and psychological trauma in 1989 from a helicopter crash while serving as a U.S. Marine in Panama.  *Id.* ¶¶ 7-8b.  Sometime in May 2004, Mr. Palmquist began working as a medical support assistant for the VA at its Medical Center in Iron Mountain, Michigan.  *Id.* ¶ 9.  Mr. Palmquist claimed that he was denied promotions and jobs in other VA offices—specifically a job at the VA's regional office in Nashville, Tennessee—because of his disabilities.  *Id.* ¶¶ 11-13.  He asserted that he was not hired, or even interviewed, for the Nashville job because he received a bad reference from his Iron Mountain supervisor, Sherry Aichner.  *Id.* ¶¶ 13a-13b.

On December 2, 2010, after a four-day trial, a federal jury returned a verdict for the Secretary.  *See Minute Entry* (ECF No. 157); *Minute Entry* (ECF No. 172); *Verdict Form* (ECF No. 174).  In response to special interrogatories, the jury found for Mr. Palmquist on three issues: (1) that Mr. Palmquist was denied affirmative action for disabled veterans, (2) that Ms. Aichner's employment reference on March 2006 was an adverse employment action, and (3) that retaliation for Mr. Palmquist's protected activity was a motivating factor in the VA's decision not to hire him for the Tennessee position.  *Verdict Form* ¶¶ 1-2, 4.  The jury decided two issues in the VA's favor: (1) that retaliation for Mr. Palmquist's protected activity

was not a motivating factor in Ms. Aichner's employment reference and (2) that the VA proved by a preponderance of the evidence that the VA's Tennessee Office would have taken the same action against Mr. Palmquist without considering retaliation. *Id*. ¶¶ 3, 6.  On December 3, 2010, the Court entered a judgment in the Secretary's favor.  *Id*. ¶ 6; *Judgment* (ECF No. 178).

**B.    Procedural History**

On December 17, 2010, the Secretary filed a Bill of Costs, requesting $18,408.10 for witness fees, docket fees, and "other costs."  *Bill of Costs* (ECF No. 179).  Mr. Palmquist filed a brief opposing the Bill of Costs on January 7, 2011. *Pl.'s Obj. to Def.'s Bill of Costs* (ECF No. 186).  On November 16, 2012, the Clerk of Court ordered Mr. Palmquist to pay the Secretary's litigation costs but reduced the amount requested from $18,408.10 to $10,191.20.  *Order on Bill of Costs* (ECF No. 199) (*Order*).  In her Order, the Clerk determined that Mr. Palmquist was not liable for the $350 docketing fee and she reduced the amount the Secretary requested for witness fees by $406 because Jeremy Mitchell did not testify at trial and was not a necessary witness.  *Id.* at 2-3.  The Clerk also reduced the witnesses' expenses by $7,460.90 because four of the ten witnesses did not testify at trial.  *Id.* at 3-4.

On November 30, 2012, Mr. Palmquist filed a motion requesting the Court to review the Clerk's decision on the Bill of Costs.  *Pl.'s Mot for Review by Ct. of Nov. 16, 2012 Order on Costs by the Clerk of Ct.* (ECF No. 202) (*Pl.'s Mot*.). The Secretary responded to Mr. Palmquist's motion on December 18, 2012, arguing that the Clerk's decision should be upheld.  *Resp. to Pl.'s Mot. Regarding Costs* (ECF No.

203) (*Def.'s Opp'n*).   On January 2, 2013, Mr. Palmquist responded to the Secretary's opposition.  *Pl.'s Reply in Supp. of Mot. for Review by the Ct. of Nov. 16, 2012 Order on Costs by the Clerk of Ct.* (ECF No. 204) (*Pl.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Mr. Palmquist's Motion

Mr. Palmquist insists that the Court should overturn the Clerk's Order and deny the Secretary's Bill of Costs in its entirety.  *Pl.'s Mot.* at 1.  First, he argues that costs should be denied because similar to *Kuzman v. Hannaford Brothers, Co.*, No. CV-04-87-B-W, 2005 U.S. Dist. LEXIS 17101 (D. Me. Aug. 10, 2005), his case invoked issues of public interest and his claims had merit.  *Id*. at 1-3.  Mr. Palmquist also cites three court of appeals cases outside the First Circuit and a current circuit split for the proposition that the jury's motivating factor finding should be enough to establish that he is the prevailing party in the lawsuit for the purposes of costs and equitable relief.  *Id*. at 3-4.

Second, Mr. Plamquist contends that the VA should be responsible for its own witnesses' expenses since the jury found that retaliation played into the VA's employment decision.  *Id*. at 4.  Third, he argues that the balance of the parties' resources clearly shows that he cannot pay the Secretary's costs.  *Id*.  Mr. Palmquist points out that he is incarcerated, has modest assets and significant debt, is financially responsible for his son, and has some history of unemployment whereas the Secretary, an agent of the Government, is in a much better financial position to sustain the $10,191.20 costs.  *Id*. at 4-5.  Finally, Mr. Palmquist insists that Federal

4

Rule of Civil Procedure 54(d)(1) does not apply to his case because the Americans with Disabilities Act (ADA) provides a superseding rule.  *Id.* at 5.

### B.    The Secretary's Opposition

In response, the Secretary asserts that Mr. Palmquist cannot rebut the presumption in favor of taxation of costs for the prevailing party.  *Def.'s Opp'n* at 1. First, the Secretary argues that Mr. Palmquist's civil rights preemption argument is irrelevant because the rule he cites applies to attorney's fees and not to general costs.  *Id.* at 2.   Next, the Secretary points out that Mr. Palmquist sued the VA under the Rehabilitation Act, not the ADA, and therefore the ADA's rule on costs is inapplicable.  *Id.* at 2-3.   Instead, the Secretary argues that the Rehabilitation Act's statutory language requires litigation costs to be awarded as a matter of course.  *Id.* at 2 (citing *Halasz v. Univ. of New England*, 821 F. Supp. 40, 41 (D. Me. 1993)).

The Secretary also insists that Mr. Palmquist "overstates the value of the rulings that he obtained from the Court" and that his case furthers his own subjective interests, not the interest of the public at large.  *Id.* at 3-4.   Further, he argues that other circuits would not find that the jury's motivating factor conclusion makes Mr. Palmquist the prevailing party because the cases Mr. Palmquist cites were decided before *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).  *Id.* Finally, because Mr. Palmquist did not file an affidavit with current information about his financial situation, the Secretary claims that there is insufficient evidence to establish financial hardship.  *Id.*

### C.      Mr. Palmquist's Reply

Mr. Palmquist replies that the Secretary's "proposed test that plaintiff must have won relief at trial before the Court may exercise its discretion to disallow costs against a plaintiff is irreconcilable with this Court's holding in *Kuzman*." *Pl.'s Reply* at 1-2.   Next, Mr. Palmquist asserts that *Halasz* actually supports his argument because it confirms that the Court should not require him to pay costs given his indigency, unemployment, and incarceration. *Id.* at 2. Mr. Palmquist also informs the Court that he has filed a petition for certiorari with the United States Supreme Court given the mixed-motive remedy "3-3 split among the United States court of appeals." *Id.* at 2-3. Further, contrary to the Secretary's argument, Mr. Palmquist points out that courts involved in the current circuit split have affirmed rulings made before *Gross*.  *Id.* at 3 n.1.  Finally, because the ADA was modeled after the Rehabilitation Act and courts generally interpret the statutes together absent conflicting language, Mr. Palmquist argues that the Rehabilitation Act should bar costs here just like the ADA given the ADA's strict rule on awarding costs. *Id.* at 3-4.

## III.   DISCUSSION

### A.      Legal Standard

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1).  Costs may include fees and disbursements for witnesses and docket fees.  28 U.S.C. § 1920; *see*

*In re Two Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 994 F.2d 956, 962 (1st Cir. 1993) ("Rule 54(d) works in tandem with [§ 1920]"). "[T]here is a general presumption favoring the recovery of court costs by prevailing parties." *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 46 (1st Cir. 2010).

According to Rule 54(d)(1), the Clerk of Court may tax an order of costs to the non-prevailing party as long as she gives fourteen days' notice. FED. R. CIV. P. 54(d)(1). Despite the general presumption in favor of awarding court costs to the prevailing party, a party ordered to pay costs may request the Court to review the Clerk's decision. *See* FED. R. CIV. P. 54(d)(1). Ultimately, "[t]he award of costs is a matter given to the discretion of the district court, which [the First Circuit] review[s] only to ensure that no abuse of discretion occurred." *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 100 (1st Cir. 1990).

### B.    Mr. Palmquist's Challenge to the Clerk's Order of Costs

#### 1.    *Kuzman*

Mr. Palmquist argues that he should not be required to pay the Secretary's costs in light of *Kuzman*. In *Kuzman*, the Court determined that the plaintiff was not liable for the defendant's costs under Rule 54(d)(1) despite the fact she lost her retaliation lawsuit because (1) imposition of costs would cause the plaintiff financial hardship, (2) there was a great disparity in the parties' financial resources, and (3) the plaintiff's claim, although ultimately unsuccessful, had merit and invoked issues of public value. 2005 U.S. Dist. LEXIS 17101, at *4-5. The Court addresses each of these issues.

### a.   Inability to Pay

The Court agrees with the Clerk that Mr. Palmquist does not meet the indigence exception.  In *Papas v. Hanlon*, the First Circuit noted that there is an exception to the prevailing party cost presumption such that "a district court may take into account the limited financial resources of a plaintiff in assessing [whether to impose] costs."  849 F.2d 702, 704 (1st Cir. 1988).  However, the indigence exception is narrow.  *Martinez v. Hongyi Cui*, No. 06-40029-FDS, 2009 U.S. Dist. LEXIS 97267, at *12-13 (D. Mass. Apr. 13, 2009); *see Bucksar v. Mayo*, No. 11-10134-RBC, 2013 U.S. Dist. LEXIS 46378, at *7-8 (D. Mass. Mar. 28, 2013); *Kuzman*, 2005 U.S. Dist. LEXIS 17101, at *4-5 (noting that the Court's ability to consider the limited resources of a Title VII plaintiff "does not mean every Title VII plaintiff . . . is absolved from the presumptive working of Rule 54(d)").

> When determining whether the indigence exception applies, the Court must:

> make a threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time or in the future.  The burden is on the losing party to provide the district court with sufficient documentation to support such a finding.  This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expense.

*Martinez*, 2009 U.S. Dist. LEXIS 97267, at *12-13 (quoting *Rivera v. City of Chicago,* 469 F.3d 631, 636 (7th Cir. 2006)).

Mr. Palmquist has not provided the Court with any updated evidence of his indigence.  The only document in this case concerning Mr. Palmquist's financial status is an affidavit he completed in October 2010.  *See Pl.'s Obj. to Def.'s Bill of*

8

Costs Attach 1, *Pl.'s Aff. of Finances* (ECF No. 186-1) (*Pl.'s Aff.*).  In that affidavit, Mr. Palmquist stated that he has few assets, owes some debts, has a dependent child, and was employed with the VA until March 2010.  *Id.*  Because of Mr. Palmquist's criminal case, the Court is aware that he is currently incarcerated for filing false claims with the VA and theft of government property in violation of 18 U.S.C. § 287 and § 641.  *Judgment* at 1-2 (ECF No. 90 in 1:10-cr-00150-JAW) (ordering Mr. Palmquist's incarceration for eighteen months on November 7, 2011). The Clerk analyzed this outdated evidence and determined that "[t]here is no indication in the affidavit or in the record that [Mr. Palmquist] is unable to retain future employment to secure earnings." *Order* at 5.

Mr. Palmquist may have difficulty paying the full $10,191.20.  First, Mr. Palmquist may still cope with the physical and psychological effects of a service-connected brain injury.  Second, although the Clerk noted that "evidence presented at trial showed that [Mr. Palmquist] was able to secure employment readily for years", the Court suspects that he will have some difficulty obtaining work given his felony convictions. *Order* at 5.  Third, the Court has already ordered Mr. Palmquist to pay the VA $47,429 in restitution. *Judgment* at 5.

Even considering Mr. Palmquist's significant financial hurdles, the Court's analysis is guided by the Seventh Circuit's observation in *Rivera* that "the district court [may] make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'"  469 F.3d at 635 (quoting *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)).  Other district courts

9

in the First Circuit have adopted *Rivera*'s holding and overruled objections to costs under Rule 54(d)(1).  *See Bucksar*, 2013 U.S. Dist. LEXIS 46378, at *8 (concluding that because "[t]he plaintiff here has provided no documentation to support her claim of indigence, [ ] her argument must fail"); *Martinez*, 2009 U.S. Dist. LEXIS 97267, at *12-17 (noting that because the plaintiff did not provide a schedule of expenses along with her affidavit, she arguably did not meet her burden of proving indigence, but nevertheless reducing the amount owed from nearly $3,000 to $100 given that "a reasonable inference [could] be drawn that she [could] not afford to pay nearly three thousand dollars in costs" because of her lack of income, assets, and recent release from a psychiatric facility); *cf. Kuzman*, 2005 U.S. Dist. LEXIS 17101, at *3 (concluding based on the plaintiff's affidavit that the plaintiff's recently acquired assets, lack of savings, and credit card debt showed that the imposition of costs would impose a substantial hardship on her).

Here, Mr. Palmquist did not provide any documentation to support his objection to the Clerk's Order but rather referred the Court to a financial affidavit filed two years ago in his criminal case.  *Pl.'s Mot.* at 4 (noting that he has been incarcerated since January 2012 and has a restitution obligation of $47,429).  Mr. Palmquist's affidavit is not helpful because it is outdated and the statements he makes in his briefs are insufficient under *Rivera*, *Bucksar*, and *Martinez* to rebut the presumption in favor of imposing costs.  Thus, as it is unclear whether the "imposition of costs would 'work a significant hardship on [Mr. Palmquist]'", the Court declines to apply the indigency exception.  *Cf. Kuzman*, 2005 U.S. Dist.

10

LEXIS 17101, at *3 (quoting *Mulvihill v. Spalding Worldwide Sports*, 239 F. Supp. 2d 121, 121 (D. Mass. 2002)).

### b.    The Parties' Relative Financial Resources

Next, the Court agrees with the Clerk that the balance of the parties' resources is less compelling here than in *Kuzman*, where the moving party was a large private business.   Although the VA's financial resources exceed Mr. Palmquist's, the VA's funds come from United States taxpayers and are designated for the benefit of this Country's veterans.  *Order* at 6; *see Rodriguez v. Potter*, No. SA-04-CA-1194-FB, 2006 U.S. Dist. LEXIS 94598, at *7-8 (W.D. Tex. Oct. 30, 2006) (concluding that the relative resources of the parties factor was irrelevant where the defendant was a government agency—the United States Post Office—and therefore was not able to achieve the "same financial success" as a private business).  The Court finds this discretionary factor unpersuasive.

### c.    The Potential Chilling Effect

Finally, with respect to the public value of Mr. Palmquist's lawsuit, the Court concludes that upholding the Clerk's Order on the Secretary's Bill of Costs should not discourage future plaintiffs from bringing meritorious retaliation lawsuits.   In *Mulvihill*, the district court noted that "public policy considerations counsel restraint in imposing costs in [a] situation [where the] Plaintiff had a colorable claim for wrongful discharge and for violation of the National Labor Relations Act and conducted his case in a professional and honorable manner, without unduly escalating costs."  239 F. Supp. 2d at 122; *see Kuzman*, 2005 U.S. Dist. LEXIS

17101, at *1.  The *Mulvihill* Court was concerned that plaintiffs seeking to bring similar sexual harassment claims would be intimidated "by the threat of imposition of costs in a case raising important issues."  239 F. Supp. 2d at 122.  Also, in *Estate of Hevia*, the First Circuit stated that "the presumption favoring an award of costs to a prevailing party is weaker in cases involving close questions" and "a district court ordinarily does not abuse its discretion by denying court costs to a prevailing party in such a case."  602 F.3d at 47.

Yet, in *Estate of Hevia,* unlike here, both parties prevailed on some claims: "the defendants prevailed on the copyright infringement claim, [and] the plaintiffs prevailed on the counterclaims."  *Id.* at 46; *see also B. Fernandez & HNOS, Inc., v. Kellogg USA, Inc.*, 516 F.3d 18, 28 (1st Cir. 2008) (requiring each party to bear its own costs because "[t]h[e] case, like many other cases calling for an indispensability determination under Rule 19(b), presented a close question that required considered balancing"); *cf. Martinez*, 2009 U.S. Dist. LEXIS 97267, at *17-18 (declining to deny costs on the grounds of an alleged chilling effect because the defendant prevailed in the lawsuit and "was cleared in all respects" of the plaintiff's sexual discrimination claims); *Halasz*, 821 F. Supp. at 42 (concluding in a Rehabilitation Act case that the plaintiff's case had enough merit to avoid the imposition of attorney's fees but was not so "close" that costs could not be awarded to the defendant).  Although the jury found that retaliation was a motivating factor in the VA's 2006 decision on Mr. Palmquist's Tennessee job application, it concluded that regardless of the VA's

consideration of that factor the VA "would have taken the same action without the consideration of retaliation." *Verdict Form* ¶¶ 4, 6.

The Court agrees with Mr. Palmquist and the Clerk that his lawsuit is publicly significant as it involves the important issues of affirmative action in the VA and Title VII rights under the Rehabilitation Act. *Order* at 6. Even so, this was not the kind of "close case" contemplated by the First Circuit in *Estate of Hevia* and *B. Fernandez & HNOS, Inc.* Further, the possibility of a Bill of Costs at the end of a lawsuit, which was a foreseeable risk to Mr. Palmquist when he brought this lawsuit, is unlikely to discourage other plaintiffs with meritorious retaliation claims from bringing them in the Court. The *Kuzman* discretionary factors do not convince the Court to reverse the Clerk's Order.

### 2.    The Impact of the Jury's Motivating Factor Finding on Costs

Next, Mr. Palmquist asserts that costs should not be awarded because some courts in other circuits do not follow *Gross* and would deem him the prevailing party given the jury's motivating factor finding. *See Pl.'s Mot.* at 3-4; *Pl.'s Reply* at 2-3, 3 n.1. On appeal, the First Circuit spoke directly to the issue in this case and wrote: "*Gross* is the beacon by which we must steer, and textual similarity between the Rehabilitation Act and the ADEA compels us to reach the same conclusion here." *Palmquist v. Shinseki*, 689 F.3d 66, 74, 77 (1st Cir. 2012) (upholding the district court's judgment). Because the First Circuit adheres to the Supreme Court's

holding in *Gross* and this Court in turn adheres to First Circuit precedent, the Court declines to overturn the costs award.[1]

### 3.     The Rehabilitation Act's Rule on Costs

The Court is not persuaded that the ADA's rule on costs supersedes the Rehabilitation Act's rule.  Mr. Palmquist argues that "[t]he Rehabilitation Act does not clearly state that costs are presumed or should be awarded based on a lower standard than for awarding [attorney's] fees."  *Pl.'s Reply* at 4.  Because the ADA is modeled after the Rehabilitation Act and contains language stating that costs cannot be awarded unless the more demanding rule in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978), is satisfied, Mr. Palmquist insists that costs cannot be imposed under the Rehabilitation Act until the *Christiansburg* standard is met. *Id.* at 3-4; *Pl.'s Mot.* at 5-6; *see Fite v. Digital Equip. Corp.,* 66 F. Supp. 2d 232, 233-34 (D. Mass. 1999) (quoting *Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos*, 38 F.3d 615, 618 (1st Cir. 1994)) (noting that the ADA only awards costs to a prevailing defendant if he can "'establish that the plaintiffs' suit was totally unfounded, frivolous, or otherwise unreasonable . . . .'").  The Court disagrees.

Section 794a(b) of the Rehabilitation Act states:

> In any action or proceeding to enforce or charge a violation of a provision of this title [ ], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

29 U.S.C. § 794a(b).  In *Halasz*, this Court noted, "[i]t is clear from the wording of section 794a(b), which permits attorney's fees as a discretionary element of costs,

---

[1]     Mr. Palmquist's petition for writ of certiorari in this case remains pending in the United States Supreme Court.

that Congress intended the costs of litigation to be awarded generally as a matter of course in Rehabilitation Act cases as they are under 28 U.S.C. § 1920 and Rule 54 of the Federal Rules of Civil Procedure." 821 F. Supp. at 42 (stating that the decision to impose costs ultimately rests with the court); *see Estate of Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1052 (9th Cir. 2009). Consistent with this District's precedent, which has presumed costs under § 794a(b), Mr. Palmquist's arguments about the lack of such a presumption and the ADA's superseding rule fail. *See Pl.'s Reply* at 4. Furthermore, the Court agrees with the Secretary that although the ADA is modeled after the Rehabilitation Act, each statute deals with costs differently. *Def.'s Opp'n* at 3; *see Estate of Martin,* 560 F.3d at 1052 (pointing out that despite the plaintiff's arguments, "[t]o our knowledge, none of our sister circuits has applied the *Christiansburg* standard to costs under the Rehabilitation Act, and we decline to do so here"). Mr. Palmquist sued under the Rehabilitation Act rather than the ADA and his attempt to apply the ADA's *Christiansburg* analysis to his Rehabilitation Act claim is unavailing.

## IV.   CONCLUSION

The Court AFFIRMS the Clerk of Court's Order on Bill of Costs (ECF No. 199) and DENIES Mark Palmquist's Motion for Review by Court of November 16, 2012 Order on Costs by the Clerk of Court (ECF No. 202).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

15

Dated this 22nd day of August, 2013